UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DISH NETWORK L.L.C.,
ECHOSTAR TECHNOLOGIES L.L.C.,
and NAGRASTAR LLC,

        Plaintiffs,

        v.

ROBERT BAUDER,

        Defendant.

Case No: 6:14-cv-01443-GAP-DAB

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**MOTION FOR DEFAULT JUDGMENT**

Plaintiffs DISH Network L.L.C., EchoStar Technologies L.L.C., and NagraStar LLC (collectively, "DISH Network") respectfully move for default judgment against Robert Bauder under Federal Rule of Civil Procedure 55(b)(2), and in support state:

**I.     INTRODUCTION**

DISH Network filed this action on September 4, 2014 based on evidence it obtained showing that Defendant circumvented DISH Network's security technology and intercepted the copyrighted satellite television programming broadcast by DISH Network without paying the required subscription fee.

In particular, DISH Network acquired business records from an individual by the name of Francis Philip. Philip sold subscriptions to a pirate television service known as NFusion Private Server ("NFPS"). Upon subscribing to NFPS, Philip provided the subscriber a passcode that enabled the subscriber to access a computer server through the use of an unauthorized receiver. The server transmits DISH Network's proprietary control words or "keys" over the Internet to the subscriber's receiver – the basis of a form of piracy called "Internet key sharing" or "IKS." With these control words, the subscriber is able to decrypt DISH Network's encrypted satellite broadcasts

without authorization. The records provided by Philip and other evidence obtained by DISH Network establish that Defendant was a paying subscriber to NFPS, and in fact used the service to steal DISH Network programming.

Defendant failed to respond or otherwise defend this action despite being properly served, and therefore default was entered on October 6, 2014. (Dkt. 20.) Defendant is not an infant, incompetent person, or on active duty in the military or otherwise exempted under the Servicemembers' Civil Relief Act. (Dkt. 19-1, Declaration of Christopher Craven ¶¶ 7-11, Exs. 1-2.) For the reasons below, default judgment is now appropriate.

## II.     ARGUMENT & AUTHORITIES

### A.     Default Judgment Should Be Entered On DISH Network's ECPA Claim

#### 1.     Legal Standard

After entry of default, the plaintiff is required to seek default judgment from the court. Fed.R.Civ.P. 55(b)(2) ("[T]he party entitled to a judgment by default shall apply to the court therefor.") In defaulting, a defendant "admit[s] the plaintiff's well-pleaded allegations of fact" for purposes of liability. *Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987). "If the facts alleged in the complaint are sufficient to establish liability, the court must conduct an inquiry to ascertain the amount of damages." *Bardfield v. Chisholm Props. Circuit Events, LLC,* No. 3:09cv232/MCR/EMT, 2010 WL 2278461, at *7 (N.D. Fla. May 4, 2010). The Court may award damages for default judgment without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculations." *Adolph Coors Co. v. Movement Against Racism and the Klan,* 777 F.2d 1538, 1543 (11th Cir. 1985). Under such circumstances, the record must "adequately reflect[] the basis for award via … demonstration by detailed affidavits establishing the necessary facts." *Id.* at 1544.

As determined in the sections that follow, the well pled factual allegations in DISH Network's Complaint, which are accepted as true, establish Defendant's liability under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1)(a) and § 2520. The ECPA allows for statutory damages, a sum certain, and thus a hearing to determine damages is not necessary.

### 2. Defendant Intentionally Intercepted DISH Network's Satellite Signal in Violation of the ECPA

Section 2511(1)(a) makes it unlawful for a person to "intentionally intercept" any "electronic communication." 18 U.S.C. § 2511(1)(a). "[A] private right of action is allowed under 18 U.S.C. § 2520 for violations of § 2511." *DirecTV, Inc. v. Bennett*, 470 F.3d 565, 569 (5th Cir. 2006); *see also DirecTV, Inc. v. Treworgy,* 373 F.3d 1124, 1127 (11th Cir. 2004) ("Congress chose to confine private civil actions to defendants who had "intercepted, disclosed, or intentionally used [a communication] in violation of … [the ECPA.]") Encrypted broadcasts of satellite television programming, such as those transmitted by DISH Network, constitute "electronic communications" under the ECPA. *DirecTV Inc. v. Nicholas,* 403 F.3d 223, 225 (4th Cir. 2005) ("It is undisputed that satellite television transmissions constitute electronic communications under § 2510(12)"); *see also Bennett*, 470 F.3d at 569; *United States v. One Macom Video Cipher 11*, 985 F.2d 258, 260-61 (6th Cir. 1993) (recognizing the ECPA's plain language encompasses satellite signals); *United States v. Herring*, 993 F.2d 784, 787 (7th Cir. 1993) (finding Congress contemplated interception of satellite television programming by ECPA's protections for electronic communications); *United States v. Lande*, 968 F.2d 907, 909-10 (9th Cir. 1992) (finding that interception of satellite signals constituted a violation of § 2511 because satellite signals are electronic communications under the ECPA).

DISH Network adequately pleads that Defendant intentionally intercepted its satellite

signal in violation of the ECPA.  For example, Defendant purchased NFPS subscriptions.  (Dkt. 1, Pls.' Compl. at ¶ 26.)  Defendant used the NFPS service to misappropriate DISH Network's proprietary control words and intercept DISH Network's signal.  (*Id.* at ¶ 27.)  Specifically, to access the NFPS server, Defendant used an unauthorized receiver that had been purposefully loaded with piracy-enabling software.  (*Id.*)  Each time the receiver was tuned to an encrypted DISH Network channel, the control word was requested from the NFPS server.  (*Id.*)  In response, the NFPS IKS server provided the control word, which automatically descrambled DISH Network's satellite signal and enabled Defendant to view DISH Network programming without authorization.  (*Id.*)  Defendant's interception resulted from a number of deliberate acts directed at exploiting the NFPS IKS service, and in no way can be deemed accidental.  (*See id.* at ¶¶ 26-27, 41.)

Altogether, the well pled allegations in the complaint, which are taken as true, conclusively establish Defendant's intentional interception of DISH Network's satellite signal in violation of the ECPA.  In an analogous case filed against a subscriber of a similar IKS service, the court held that DISH Network's "complaint pleads sufficient facts to show a plausible claim for relief" under section 2511(1)(a), and entered default judgment as a result.  *DISH Network L.L.C. v. DelVecchio,* 831 F. Supp. 2d 595, 599 (W.D.N.Y. 2011); *see also DISH Network L.L.C. v. Rounds,* No. 11-241, 2012 WL 1158798, at *3 (W.D. Pa. Apr. 6, 2012) (granting motion for default judgment and finding that DISH Network's complaint stated a violation of section 2511(1)(a)).  For the same reason, default judgment should be entered here as to the ECPA claim.

**B.     DISH Network Should Be Awarded $10,000 In Statutory Damages For Defendant's Violations Of The ECPA**

Section 2520(c)(2) authorizes statutory damages where, as here, a scrambled or encrypted electronic communication has been intentionally intercepted.  *See* 18 U.S.C. § 2520(c)(1)-(2).  The

statute sets statutory damages at the greater of: "(A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; *or* (B) statutory damages of whichever is the greater of $100 a day for each day of violation *or* $10,000." *Id.* § 2520(c)(2) (emphasis added). "Congress wrote § 2520(c)(2) to give discretion to the Court in determining whether to award damages, but the plain language of the statute does not . . . authorize the Court to grant anything other than the damages permitted by the statute." *DelVecchio*, 831 F. Supp. 2d at 601; *see also DirecTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1132 (M.D. Ala. 2004) ("The court has discretion whether to award damages at all… but the court, if it decides to award damages, has no discretion as to the amount.").

In *DirecTV, Inc. v. Rawlins*, the court discussed the following factors to determine whether it should award statutory damages pursuant to the ECPA: "the severity or minimal nature of the violation; whether there was actual damage to the victim; the extent of any intrusion into the victim's privacy; the relative financial burdens of the parties; whether there was a reasonable purpose for the violation; and whether there was any useful purpose to be served by imposing the statutory damages amount." *DirecTV, Inc. v. Rawlins*, 523 F.3d 318, 325-26 (4th Cir. 2008) (citing *Nalley v. Nalley*, 53 F.3d 649, 654 (4th Cir. 1995)). Likewise, in *DirecTV, Inc. v. Griffin*, the court identified similar factors and acknowledged two additional considerations: "whether the defendant profited from the interception; and…whether the defendant has already been punished in some other proceeding." *DirecTV, Inc. v. Griffin*, 290 F. Supp. 2d 1340, 1348 (M.D. Fla. 2003) (citing *Goodspeed v. Harman*, 39 F. Supp. 2d 787, 791 (N.D. Tex. 1999)). These factors demonstrate that Defendant should be held liable for damages of $10,000 to DISH Network.[1]

---

[1] DISH Network is not in a position to establish actual damages in excess of $10,000 for the reasons identified in *DISH Network L.L.C. v. Gonzalez*, No. 13-cv-00107-LJO-SKO, 2013 WL 2991040, at *6-7 (E.D. Cal. June 13, 2013), *adopted at* 2013 WL 4515967 (E.D. Cal. Aug. 26, 2013). In

### 1. Defendant Engaged in Piracy Violating The ECPA

Defendant purchased multiple subscriptions to the NFPS service and used this service to intercept DISH Network programming. The records provided by Philip establish that Defendant purchased four subscriptions to NFPS using PayPal on December 11, 2011 and December 6, 2012. (Declaration of Steven Rogers ["Rogers Decl."] ¶ 6(a)-(e), Exs. 1-5.)   For these subscriptions, Defendant was assigned a passcode to access the NFPS service. (*Id.*)   NFPS is strictly a piracy service and has no legitimate aspect of its business. (Declaration of Gregory Duval ["Duval Decl."] ¶ 17.)

There is also evidence that Defendant used the NFPS subscriptions to illegally receive DISH Network programming. According to records maintained by Philip, Defendant went by the username "Robert516" at the website *www.ftazeta.com* ("Ftazeta").  (Rogers Decl. ¶ 6(e), Ex. 5.) On January 7, 2013, Defendant, in a forum entitled "Issues with NFPS service", makes a post on the Ftazeta website discussing problems with connecting to NFPS and states, "I was up last night with minor freezing today I have nothing…". (*Id.* ¶ 7(a), Ex. 6.) Likewise, in the same forum on February 15, 2013, members of Ftazeta are discussing their inability to connect to NFPS and Defendant states "up and running good now for me for over an hour and half…" (*Id.* ¶ 7(b), Ex. 7.) Defendant's post indicates that the NFPS service was working at times for Defendant.

Overall, Defendant purchased multiple subscriptions to the NFPS service. The foregoing statements on piracy forums show that Defendant was using the NFPS service to intercept DISH Network programming. The exact period of time the Defendant used NFPS to steal DISH Network

---

light of Defendants' default, DISH Network is also unable to provide a complete damages model based on the number of days Defendant were in violation of the ECPA. *See id.* at *7.  Therefore, as in *Gonzalez*, "the $10,000 amount becomes the presumed damage award." *Id.*; *see also DirecTV, Inc. v. Craig*, 361 F. Supp. 2d 1339, 1344 (M.D. Ala. 2005); *DISH Network L.L.C. v. Taylor*, No. 1:14-cv-292-SS, Dkt. 16 (W.D. Tex. Sept. 8, 2014).

programming cannot be determined from the evidence now available. What is known is that Defendant purchased a subscription to NFPS as early as December 2011, and acknowledged that he was using the service. The fact that Defendant bought several NFPS passcodes further indicates that NFPS was working for him. Had Defendant appeared in this case and DISH Network been given an opportunity to conduct discovery, more extensive ECPA violations may have been shown. DISH Network, however, should not be denied damages because Defendant refused to take part in the process. *Gonzalez*, 2013 WL 2991040, at *7-9.

### 2. Defendant Caused Actual Harm To DISH Network

DISH Network suffers significant harm as a result of Defendant intercepting DISH Network programming. Piracy jeopardizes DISH Network's security system and requires costly security updates, damages the reputations and goodwill of DISH Network, EchoStar Technologies, and NagraStar which are vital to their businesses, and leads to lost programming revenues and lost profits that are customarily gained from the sale of subscription packages and equipment to authorized DISH Network subscribers. *See infra* Part II.B.1 (discussing harm in greater detail in the context of DISH Network's request for permanent injunction). Accordingly, this second factor supports an award of statutory damages to DISH Network. *See Gonzalez*, 2013 WL 2991040, at *9 ("Plaintiffs have sufficiently demonstrated that they suffered actual damages from Defendant's action through the loss of a legitimate subscriber for the period Defendant accessed the encrypted signal.").

### 3. The Relative Financial Burdens Favor DISH Network

The next factor in deciding whether to award damages looks at the relative financial burdens of the parties. DISH Network is harmed by Defendant's unlawful reception of DISH Network programming for the reasons stated above. The damage includes lost programming

revenues, as well as injury to its business reputation and security system which cannot be exactly quantified. *See infra* Part II.B.1. The loss to DISH Network also includes the expense of pursuing this case, which consumes the time of its employees and requires retention of outside investigators and counsel, if nothing else to enjoin Defendant from intercepting DISH Network programming in violation of the ECPA. Defendant, in contrast, has not provided any evidence concerning his financial situation. Nor has Defendant explained why a $10,000 judgment will impose a greater burden on him than he already imposed on DISH Network by intercepting DISH Network programming. For these reasons, this factor weighs in favor of DISH Network or is neutral at best.[2]

### 4. There Is No Justification for Defendant's ECPA Violation

Defendant was made aware of this case but chose not to appear and explain his misconduct. *See supra* Part I. DISH Network's well-plead allegations of Defendant's unauthorized reception of DISH Network programming are accepted as true. *Bowman,* 820 F.2d at 361. As the court held in *Gonzalez* when addressing this factor, "[i]f the allegations are deemed to be true, there can be no legitimate reason for Defendant's actions." 2013 WL 2991040, at *9 (citing *Rounds*, 2012 WL 1158798, at *3); *see also Craig*, 361 F. Supp. 2d at 1344 (finding the record devoid of any justification for defendant's actions, and observing that "pirate access devices rarely serve a legitimate purpose beyond stealing satellite signals"). This factor therefore supports an award of statutory damages.

### 5. Awarding Damages To DISH Network Serves Important Purposes

Awarding damages will serve the legitimate purpose of compensating DISH Network for its loss, and in addition will act as a deterrent for Defendants and others to not engage in the

---

[2] The third factor takes into account the privacy concerns of the victim and, while perhaps relevant to a case involving an intercepted telephone call or other personal communication, appears to be largely inapplicable to the facts of this case.

unauthorized reception of DISH Network programming. The *Gonzalez* court held that this factor weighed "strongly in favor of awarding statutory damages" because "no damages would effectively reward Defendant for wrongful actions by allowing the misconduct to remain unsanctioned." 2013 WL 2991040, at *10.  Put differently, "a refusal to award statutory damages incentivizes, rather than deters, Defendant and others from similar acts of piracy." *Id.*  For that same reason, this factor tips sharply in favor of awarding damages to DISH Network.

### 6. Defendant Has Profited From His Violation of the ECPA

Defendant profited from his violation of the ECPA by receiving DISH Network programming without paying the required subscription fee. As discussed in more detail in Part II.B.1, DISH Network's average monthly subscription revenue per authorized subscriber is around $84. (Duval Decl. ¶ 21.)  Defendant, however, enjoys full access to DISH Network programming through the NFPS service, including premium and pay-per-view channels, the value of which substantially exceeds what is included in the average subscriber calculation. (*Id*.)  The full extent of the profit reaped from Defendant's ECPA violations cannot be accurately determined for a variety of reasons, most significant of which is Defendant's unwillingness to partake in the judicial process. Furthermore, in similar ECPA actions in this circuit, courts have awarded plaintiffs $10,000 despite the inability to introduce evidence that the defendant profited from their ECPA violation. *See Craig*, 361 F. Supp. 2d at 1344 (awarding $10,000 pursuant to the ECPA despite plaintiff's incapacity to demonstrate defendant profited from his violation or actually used his piracy device).

### 7. Defendant Has Not Been Punished In Any Other Proceeding

The last factor to consider when determining the appropriateness of ECPA damages concerns whether Defendant was punished in any other proceeding for his actions. DISH Network

has not previously sued Defendant to hold him liable for the actions which are the basis of this suit. To date, Defendant's acts of illegally pirating DISH Network programming without paying the required subscription fee have gone unpunished.

In sum, Defendant should be held liable for damages of $10,000 to DISH Network for his violation of the ECPA. Several courts in the Eleventh Circuit have entered default judgment and awarded damages of $10,000 in cases filed against individual defendants for pirating DISH Network programming using IKS services. *See, e.g., DISH Network L.L.C. v. Bradley*, No. 0:13-cv-61918-JLC (S.D. Fla. Feb. 7, 2014) at Dkt. 11; *DISH Network L.L.C. v. Sweeting*, No. 1:11-cv-140-WLS (M.D. Ga. Aug. 31, 2012) at Dkt. 13; *DISH Network L.L.C. v. Powell*, No. 2:12-cv-212-WHA-WC (M.D. Ala. May 8, 2012) at Dkt. 12; *DISH Network L.L.C. v. Pippin*, No. 5:11-cv-282-RS-EMT (N.D. Fla. Nov. 8, 2011) at Dkt. 11; *DISH Network L.L.C. v. Main*, No. 8:11-cv-1861-EAK-TGW (M.D. Fla. Oct. 11, 2011) at Dkt. 13.

**C.     Permanent Injunctive Relief Should Be Awarded**

The ECPA authorizes courts to grant "preliminary and other equitable or declaratory relief as may be appropriate." 18 U.S.C. § 2520(b)(1). The traditional criteria for issuance of a permanent injunction require that the plaintiff demonstrate: "(1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." *Flexiteek Americas, Inc. v. PlasTEAK, Inc.,* No. 08-60996-CIV-COHN/SELTZER, 2009 WL 2957310, at *8, (S.D. Fla. Sept. 15, 2009) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). The requirements for permanent injunctive relief are met in this case.

1.   **DISH Network Is Suffering Irreparable Harm That Cannot Be Corrected With Monetary Damages Alone**

The Eleventh Circuit has recognized that loss of goodwill, loss of ability to control business reputation, and lost profits each constitute irreparable harm. *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC,* 425 F.3d 964, 970 (11th Cir. 2005) ("the loss of customers and goodwill is an irreparable injury") (quoting *Ferrero v. Associated Materials Inc.,* 923 F.2d 1441, 1449 (11th Cir. 1991)); *Ferrellgas Partners, L.P. v. Barrow,* 143 F. App'x 180, 190 (11th Cir. 2005) ("[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill").

Plaintiffs DISH Network, EchoStar Technologies, and NagraStar provide copyrighted, subscription-based satellite television programming. (Duval Decl. ¶¶ 5-10.) The companies invest millions of dollars each year in the security measures that protect DISH Network programming. (*Id.* ¶ 18.) Piracy, however, undermines the investment in the technology and results in the need for costly security updates. (*Id.*) For example, the IKS method of piracy engaged in by Defendant is designed to circumvent the "Nagra 3" security technology most recently introduced by DISH Network, which took approximately 18 months to implement and had an estimated cost of more than $100 million. (*Id.* ¶ 19) In addition, anti-piracy countermeasures are continually being developed and released in the DISH Network satellite stream, at significant expense, to prevent persons like Defendant from stealing DISH Network programming. (*Id.*)

Equally serious is the harm to the reputation and goodwill of DISH Network, EchoStar Technologies, and NagraStar. Their business reputations are built on and depend on the delivery of secured content. (*Id.* at ¶ 20.) Piracy damages those reputations and interferes with contractual and prospective business relationships of the companies, including relationships with programming providers and customers for set-top boxes and security system solutions. (*Id.*)

Calculating the reputational damage and lost sales due to this impact is inherently difficult, if not impossible, and therefore constitutes irreparable harm. *See Hi-Tech Pharms., Inc. v. Herbal Health Prods., Inc.,* 311 F. Supp. 2d 1353, 1358 (N.D. Ga. 2004) (noting that "the loss of goodwill may constitute irreparable harm under certain circumstances"); *Macrovision v. Sima Prods, Corp.*, No. 05 Civ. 5587 (RO), 2006 WL 1063284, at *3 (S.D.N.Y. Apr. 20, 2006) ("If [the plaintiff] is unable to prevent the circumvention of its technology, its business goodwill will likely be eroded, and the damages flowing therefrom extremely difficult to quantify.").

Finally, piracy directly and negatively impacts DISH Network's bottom line. DISH Network's average monthly revenue per authorized subscriber is around $84. (Duval Decl. ¶ 21.) Defendant, however, enjoys full access to all DISH Network programming through the NFPS service, including premium and pay-per-view channels, the value of which far exceeds that built into the average subscriber calculation. (*Id.*) Similarly, piracy deprives NagraStar and EchoStar Technologies of revenues ordinarily obtained from the sale of equipment to legitimate DISH Network subscribers. (*Id.*) Thus, the harm caused by Defendant is irreparable and cannot be fully corrected by monetary damages alone. *See DISH Network L.L.C. v. Whitcomb*, No. 11-CV-0333 W(RBB), 2011 WL 1559825, at *3 (S.D. Cal. Apr. 25, 2011) (holding that lost profits resulting from the interception of DISH Network programming is irreparable harm); *Coxcom*, *Inc. v. Chaffee*, 536 F.3d 101, 112 (1st Cir. 2008) (granting permanent injunction and finding irreparable harm in light of the relative inability to detect piracy and the magnitude of lost revenues).

**2.     The Balance Of Hardships And Public Interest Favor Injunctive Relief**

DISH Network will be irreparably harmed without an injunction for the reasons above. In contrast, the burden placed on Defendant by an injunction would consist only of the cost of foregoing illegal conduct, which can hardly be accorded any weight in an equitable balancing of

factors. *See Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) ("[Defendant] cannot complain of the harm that will befall it when properly forced to desist from its infringing activities"). The balance of equities favors granting the injunctive relief sought by DISH Network.

Likewise, it is beyond debate that the public interest is served by enjoining activities that violate federal law. *See, e.g., Whitcomb*, 2011 WL 1559825, at *4 (recognizing strong public interest in having anti-piracy legislation enforced) (citing *Coxcom*, 536 F.3d at 112). Permanently enjoining Defendant will serve the public interest by upholding copyright protections and, correspondingly, advancing the underlying goals of copyright law to "prevent[] the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Computer*, *Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983); *see also Kevin Harrington Enters., Inc. v. Bear Wolf, Inc.*, No. 98-1039-CIV-UNGARO-BENAGES, 1998 WL 35154990, at *9 (S.D. Fla. Oct. 8, 1998) ("it is in the public interest to enjoin defendant from any further infringement of plaintiffs' copyright rights"). The public does not, however, benefit by allowing Defendant to continue stealing copyrighted DISH Network programming. Consideration of the public interest thus favors injunctive relief.

    **3.**    **The Injunction Must Be Sufficient To Prevent Defendant From Violating DISH Network's Rights Under The ECPA**

Defendant has been receiving DISH Network's proprietary control words from the NFPS IKS server and using them to circumvent the DISH Network security system and intercept DISH Network programming. Accordingly, DISH Network requests an order from the Court enjoining Defendant from:

- circumventing or assisting others in circumventing DISH Network's security system, or otherwise intercepting or assisting others in intercepting DISH Network's satellite signal;

- testing, analyzing, reverse engineering, manipulating, or otherwise extracting codes, data, or information from DISH Network's satellite receivers, smart cards, satellite data stream, or any other part or component of the DISH Network security system.

### III. CONCLUSION

DISH Network requests that the Court grant default judgment against Defendant on Count III of the complaint alleging violation of the ECPS, and award DISH Network statutory damages of $10,000 and a permanent injunction. Provided that relief is granted, DISH Network will dismiss Counts I and II with prejudice so that a final judgment may be entered in this case.

DATED: November 6, 2014

Respectfully submitted,

By: /s/ Christopher P. Craven
Christopher P. Craven (admitted *pro hac vice*)
christopher.craven@hnbllc.com
Kevin A. Goldberg (admitted *pro hac vice*)
kevin.goldberg@hnbllc.com
**HAGAN NOLL & BOYLE LLC**
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146

James A. Boatman, Jr.
jab@boatman-law.com
Florida Bar No. 0130184
**THE BOATMAN LAW FIRM PA**
3021 Airport-Pulling Road North, Suite 202
Naples, FL 34105
Telephone: (239) 330-1494
Facsimile: (239) 236-0376

Attorneys for Plaintiffs DISH Network L.L.C., EchoStar Technologies L.L.C., and NagraStar LLC